UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WILLIAM M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-32 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, William M., on January 31, 2019. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, William M., filed applications for Disability Insurance Benefits and Supplemental Security Income on November 30, 2015, alleging a disability onset date of March 15, 2015. (Tr. 12). The Disability Determination Bureau denied William M.'s applications initially on February 3, 2016, and again upon reconsideration on May 17, 2016. (Tr. 12). William M. subsequently filed a timely request for a hearing on July 2, 2016. (Tr. 12). A hearing was held on September 15, 2017, before Administrative Law Judge (ALJ) John Carlton, and the ALJ issued an unfavorable decision on February 16, 2018. (Tr. 12-27). Vocational Expert (VE) Dale A. Thomas appeared by telephone at the hearing. (Tr. 12). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

The ALJ found that the date last insured was December 31, 2021. (Tr. 14). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that William M. had not engaged in substantial gainful activity since March 15, 2015, the alleged onset date. (Tr. 15).

At step two, the ALJ determined that William M. had the following severe impairments: substance abuse disorder, anxiety/depression, intellectual disorder, and chronic obstructive pulmonary disease (COPD). (Tr. 15). The ALJ found that the medically determinable impairments significantly limited William M.'s ability to perform basic work activities. (Tr. 15). The ALJ noted that upon clinical examination William M. had coarse breath sounds, expiratory wheezing, decreased breath sounds, and a cough at times. (Tr. 15). Regarding his mental function, William M. reported alcohol misuse, anxiety, panic attacks in large groups or in public, drug misuse, hyperactivity/persistent restlessness, racing thoughts, sleep disturbance, sadness, depression, trouble concentrating and focusing, fear, nervousness in social situations, nightmares, agitation, irritability, anger, hallucinations, paranoia, racing thoughts, hypervigilance, and suspiciousness. (Tr. 15). The ALJ also indicated that William M. had the following physical conditions: back pain, right-hand pain, and an eye injury. (Tr. 16). However, the ALJ found that these physical impairments were non-severe because they had not existed for twelve or more months. (Tr. 16).

At step three, the ALJ concluded that William M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ determined that William M.'s physical impairments, considered singly and in combination, did not meet or medically equal the criteria of any listed impairment. (Tr. 17). Next, the ALJ concluded that

William M.'s mental impairments, including substance use disorders, did not meet or medically equal the criteria of any listed impairment. (Tr. 17). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 17). The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 17).

The ALJ found that William M. had moderate limitations in understanding, remembering, or applying information; a moderate limitation in interacting with others; marked limitations in concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing himself. (Tr. 17-18). Because William M.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria was not satisfied. (Tr. 18). The ALJ also determined that William M. did not satisfy the paragraph C criteria. (Tr. 18). Furthermore, the ALJ found that William M. did not satisfy the paragraph A criteria for listing 12.05. (Tr. 18). The ALJ noted that no State agency psychological consultant had concluded that a mental listing was medically equaled with the substance use. (Tr. 18).

After consideration of the entire record, the ALJ then assessed William M.'s residual functional capacity (RFC) as follows:

> [B]ased on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to

3

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no working at unprotected heights, no dangerous machinery, no working outdoors or in environments with excessive humidity, wetness, dust, odors, fumes, or pulmonary irritants or excess heat or cold, would be able to work in a typical office environment, limited to simple and routine work, limited to superficial interactions with the general public, would not be able to stay on task more than 70% of the workday, and would be consistently absent from work three or more days per month.

(Tr. 18).

After considering the evidence, the ALJ found that William M.'s statements generally were consistent with the evidence concerning his concentration deficits that he would be off task and unable to consistently attend work. (Tr. 19). The ALJ afforded significant weight to the opinion of psychological consultative examiner, Dr. Dan Boen, Ph.D., who found that William M. would not be able to concentrate on the job and would not be able to stay on task. (Tr. 19).

At step four, the ALJ found that William M. was unable to perform any past relevant work. (Tr. 19). Considering William M.'s age, education, work experience, and RFC based on all of the impairments, including substance use disorders, the ALJ determined that there were no jobs in the national economy that he could perform. (Tr. 20).

However, the ALJ considered that if William M. stopped the substance use, at step two he would continue to have a severe impairment or combination of impairments that would cause more than a minimal impact on his ability to perform basic work activities. (Tr. 20). The ALJ found that William M. would still suffer from COPD and anxiety. (Tr. 20). Also, his intelligence would continue to limit his mental functioning. (Tr. 20).

At step three, the ALJ concluded that if William M. stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ found that William M.'s impairments would not meet or medically equal the criteria for listings 3.02, 12.04, 12.05, or 12.06. (Tr. 21).

In considering the paragraph B criteria, the ALJ found that William M. would have moderate limitations in understanding, remembering, or applying information; a moderate limitation in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing himself, if he stopped substance use. (Tr. 21). Because William M.'s mental impairments would not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria would not be satisfied. (Tr. 21). Additionally, the ALJ determined that William M. would not satisfy the paragraph C criteria. (Tr. 21). Furthermore, the ALJ found that William M. would not satisfy the paragraph A criteria of listing 12.05. (Tr. 22). The ALJ noted that no State agency psychological consultant concluded that a mental listing was medically equaled if William M. stopped the substance use. (Tr. 22).

After consideration of the entire record, the ALJ then assessed William M.'s residual functional capacity (RFC) as follows:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no working at unprotected heights, no dangerous machinery, no working outdoors or in environments with excessive humidity, wetness, dust, odors, fumes, or pulmonary irritants or excess heat or cold, would be able to work in a typical office environment, limited to simple and routine work, limited to superficial interactions with the general public.

(Tr. 22). The ALJ explained that in considering William M.'s symptoms he followed a two-step process. (Tr. 22). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory

5

diagnostic technique that reasonably could be expected to produce William M.'s pain or other symptoms. (Tr. 22). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited William M.'s functioning. (Tr. 22-23).

The ALJ found that if William M. stopped the substance use his medically determinable impairments reasonably could be expected to produce some of his alleged symptoms. (Tr. 23). However, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). The ALJ noted that regarding William M.'s alleged breathing problems, clinical reports documented mostly clear lungs without wheezing/rales/rhonchi, excellent air movement throughout all lung fields, and no increase in work of breathing. (Tr. 24). Next, the ALJ noted that the evidence in the record did not fully support the degree of physical functional limitations that William M. asserted. (Tr. 24). Finally, as for his psychological function, the ALJ noted that William M.'s mental status examinations reflected good concentration, no evidence of compulsions or excessive rumination, good eye contact, appropriate affect, and good memory. (Tr. 24-25). William M.'s doctors noted some anxiety and mood disturbance, but mostly noted normal mood, affect, and behavior. (Tr. 25).

Finally, the ALJ considered the opinion evidence and afforded no weight to the opinion of consultative psychological examiner, Dr. Boen. (Tr. 25). However, the ALJ afforded some weight to the opinion of the State agency psychologists and little weight to the opinion of the State agency medical consultants. (Tr. 25).

At step four, the ALJ determined that if William M. stopped the substance use, he would be unable to perform any past relevant work. (Tr. 26). Considering William M.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national

economy that he could perform, including bench assembler (108,000 jobs nationally), laundry worker (306,000 jobs nationally), and hand packager (57,000 jobs nationally). (Tr. 26). The ALJ found that because William M.'s substance use disorder was a contributing factor material to the determination of disability, William M. had not been disabled, within the meaning of the Social Security Act, from the alleged onset date, March 15, 2015, through the date of the ALJ's decision, February 16, 2018. (Tr. 27).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals

7

who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that

such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see **Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

William M. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings.  In his appeal, William M. has argued that:  (1) the ALJ erred in failing to incorporate limitations from all the medically determinable impairments, both severe and non-severe, into the RFC and not considering the combined impact; and (2) the ALJ improperly weighed the psychological consultative examiner's opinion.

William M. has argued that the RFC did not properly account for deficiencies in concentration, persistence, or pace.  "The RFC is a measure of what an individual can do despite the limitations imposed by his impairments." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); **20 C.F.R. §§ 404.1545(a), 416.945(a).** The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue,*** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. §§  404.1545(a)(3), 416.945(a)(3).**  In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis.  This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8

9

> hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

William M. contends that the RFC did not account for his limitations in concentration, persistence, or pace, and that this failure runs contrary to Seventh Circuit case law. *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014); *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019). The ALJ found that William M. had moderate limitations with regards to concentrating, persisting, or maintaining pace. (Tr. 21). In the mental RFC, the ALJ found that William M. would be able to work in a typical office environment, limited to simple and routine work, and limited to superficial interaction with the general public. (Tr. 22). William M. has argued that limiting him to simple and routine work is insufficient under the *Yurt* standard to encompass concentration,

persistence, or pace factors considering his extensive psychiatric history, as well as the limitations found in the consultative examination.

The Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt,* 758 F.3d at 858-59; *see also* ***Winsted v. Berryhill*,** 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limits of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations."). However, the ALJ did not omit any documented limitation.

In considering William M.'s moderate limitations with regard to concentrating, persisting, or maintaining pace, the ALJ noted that William M. had trouble paying attention. The ALJ also noted that Dr. Boen found that William M. had concentration deficits and that he could not perform basic arithmetic. (Tr. 21). Moreover, in the RFC analysis the ALJ considered William M.'s testimony that he could not concentrate/focus for long periods and that he could read a book but did not remember what he read, and that he had difficulty focusing on television programs. (Tr. 23).

However, the ALJ indicated that, although symptomatic at times, William M.'s mental status examination reflected good concentration, no evidence of compulsions or excessive rumination, good eye contact, appropriate affect, and good memory. (Tr. 24-25). The ALJ also found that William M.'s daily living activities demonstrated greater level of functioning than he alleged. (Tr. 24). William M. performed some household chores like cleaning, yard work, dishes, laundry, and cooking. (Tr. 25). He also testified to cleaning bathrooms, obtaining a high school diploma, and having a driver's license in the past. (Tr. 25). Furthermore, clinical notes

11

cited his reports of welding. (Tr. 25). The ALJ indicated that William M.'s daily living activities demonstrated that he had the capacity to carry out high-level daily living activities regardless of his symptoms and that he had the capacity to engage in appropriate social interaction with people outside of a social circle. (Tr. 25).

In the recent case of ***Burmester v. Berryhill***, 920 F.3d 507 (7th Cir. 2019), the Seventh Circuit affirmed the ALJ and the district court where the plaintiff failed to present evidence supporting the alleged difficulties in concentration, persistence, or pace. In ***Burmester***, the plaintiff was found to have moderate difficulties in her ability to sustain concentration, persistence or pace, and the RFC stated that she was "mentally limited to simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers and the general public." The Seventh Circuit found this RFC to be sufficient as it included all the findings that were supported by the medical evidence in the record. ***Burmester,*** 920 F.3d at 510.

Here, William M.'s argument focuses primarily on prior case law. He did not provide any discussion or point to any evidence that the ALJ failed to consider in assessing the RFC. *See **Shinseki v. Sanders**,* 556 U.S. 396, 409 (2009) (noting that the party challenging an agency determination bears the burden of establishing that the error was harmful). In fact, the evidence cited by William M. neither supported nor clarified his argument. Furthermore, in his response brief, William M. misstates the limitations contained within the mental RFC. Thus, the court finds that the ALJ's RFC assessment was supported by substantial evidence.

Next, William M. asserts that the ALJ improperly weighed the opinion of psychological consultative examiner, Dr. Boen. William M.'s argument is underdeveloped and merely speculative. An ALJ considers several factors when evaluating the opinion of a non-treating

12

medical source, including whether the source examined the claimant, the supportability of the opinion, the consistency of the opinion with the record, and the specialization of the medical source. **20 C.F.R. §§ 404.1527(c), 416.927(c).** "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). "An ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Nevertheless, the court recognizes that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled ... can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839.

William M. was examined by Dr. Boen in January of 2016. Dr. Boen concluded that William M. would have trouble understanding what he was asked to do on a job, but that he could remember what he was asked to do on a job. (Tr. 512). Dr. Boen further concluded that William M. would not be able to concentrate and that he would not be able to stay on task. (Tr. 512). Finally, Dr. Boen found that William M. would not be able to get along with coworkers and that he would have trouble being able getting along with a boss. (Tr. 512). He diagnosed William M. with mild intellectual disability, schizophrenia, and moderate major depressive disorder, recurrent episode. (Tr. 511-512).

The ALJ gave no weight to Dr. Boen's opinion because it was based on William M.'s subjective reporting that was inconsistent with the record. (Tr. 25). William M. alleged detailed auditory and visual hallucinations to Dr. Boen at the examination. However, the ALJ noted that William M. repeatedly denied having hallucinations to his treating providers and that no treating

13

providers diagnosed him with schizophrenia. (citing Tr. 439, 495,577, 585). Moreover, William M. reported to Dr. Boen that he had not used Spice since January of 2014. However, the ALJ noted that the medical records indicated that he reported using Spice daily in January of 2015. (citing Tr. 489).

The court recognizes that patients' self-reports often form the basis for psychological assessments. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). However, the more consistent a medical opinion is with the record as a whole, the more weight an ALJ will give to that opinion. *See* **20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).** The ALJ considered that Dr. Boen relied on William M.'s inconsistent self-reported symptoms, at least in part, in forming his diagnoses and conclusion. Furthermore, in assessing what weight to afford Dr. Boen, the ALJ relied upon the treatment notes of providers who had examined him. Accordingly, the ALJ's explanation for affording Dr. Boen's opinion no weight was adequate to allow the court to trace his path of reasoning. The court may not reweigh the evidence. The ALJ has supported his decision with substantial evidence, and therefore remand is not appropriate.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 23rd day of December, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge